UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

YOLANDA RAMSEY                          CIVIL ACTION NO. 6:11-cv-01455

VERSUS                                  JUDGE HAIK

MICHAEL J. ASTRUE,                      MAGISTRATE JUDGE HANNA
COMMISSIONER OF
SOCIAL SECURITY

## REPORT  AND  RECOMMENDATION

Before this Court is an appeal of the Commissioner's finding of non-disability.

Considering the administrative record, the briefs of the parties, and the applicable

law, it is recommended that the Commissioner's decision be AFFIRMED.

### BACKGROUND

The claimant, Yolanda Ramsey, was born on August 28, 1970.[1]  On April 14,

2009, at the age of 38, she applied for a period of disability, disability insurance

benefits, and Supplemental Security Income, alleging a disability onset date of

September 1, 2008.[2]   A contemporaneous disability report indicates that the

conditions allegedly limiting her ability to work were sleep apnea, high blood

---

[1]        Rec. Doc. 7-1 at 101, 108.

[2]        Rec. Doc. 7-1 at 101-102, 108-110.

pressure, asthma, diabetes, and arthritis in her knees.[3]  The only medical conditions addressed on appeal, however, relate to Ms. Ramsey's knees.  At the hearing, Ms. Ramsey testified that knee pain is preventing her from working.[4]  She has completed two years of technical college studies in medical office assisting, accounting, and office systems technology.[5]  She has work experience as an auditor for an inventory company,[6] a customer service representative or supervising cashier at Wal-Mart,[7] and a retail supervisor in a truck stop.[8]  She stopped working on July 2, 2003, but her decision to stop working was not health-related.[9]

A determination was made that Ms. Ramsey is not disabled.[10]  She then requested a hearing, which was held on June 15, 2010 before Administrative Law Judge ("ALJ") Christopher H. Juge.[11]  An unfavorable ruling was issued on July 30,

---

[3]      Rec. Doc. 7-1 at 120.

[4]      Rec. Doc. 7-1 at 32, 41.

[5]      Rec. Doc. 7-1 at 125.

[6]      Rec. Doc. 7-1 at 31.

[7]      Rec. Doc. 7-1 at 42-43.

[8]      Rec. Doc. 7-1 at 42.

[9]      Rec. Doc. 7-1 at 120.

[10]      Rec. Doc. 7-1 at 50, 51.

[11]      Rec. Doc. 7-1 at 26-49.

2010.[12]  Ms. Ramsey requested review by the Appeals Council.  On June 20, 2011, the Appeals Council denied her request for review.[13]  The Appeals Council's decision is the Commissioner's final decision for purposes of judicial review.  This appeal followed in August 2011.[14]

## ASSIGNMENT OF ERRORS

Ms. Ramsey argues that the Commissioner erred in either misinterpreting or failing to comment on her treating physician's observations regarding the severity of her knee injuries, disregarding her treating physician's observations regarding activity, failing to articulate reasons for disregarding her pain complaints, and failing to properly evaluate her orthopedic problems in connection with her obesity.

## STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to determining whether the decision was supported by substantial evidence and whether the proper

---

[12]      Rec. Doc. 7-1 at 13-20.

[13]      Rec. Doc. 7-1 at 4.

[14]      Rec. Doc. 1.

legal standards were applied in reaching the decision.[15]   If the Commissioner's findings are supported by substantial evidence, they must be affirmed.[16]   Substantial evidence is more than a mere scintilla and less than a preponderance.[17]   A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision.[18]   Finding substantial evidence requires scrutiny of the entire record as a whole.[19]   In applying this standard, the court may not re-weigh the evidence or substitute its judgment for that of the Commissioner.[20]

## DISCUSSION

A claimant seeking Social Security benefits bears the burden of proving that he or she is disabled.[21]   Disability is defined in the Social Security regulations as the "inability to engage in any substantial gainful activity by reason of any medically

---

[15]     *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001); *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000).

[16]     *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

[17]     *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

[18]     *Boyd v. Apfel,* 239 F.3d at 704.

[19]     *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

[20]     *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d at 135.

[21]     *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005); *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992); *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990); *Fraga v. Bowen*, 810 F.2d 1296, 1301 (5th Cir. 1987).

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[22]   Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit.[23]

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled.  At step one, an individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings. At step two, an individual who does not have a severe impairment will not be found disabled.  At step three, an individual who meets or equals an impairment listed in the regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1 will be considered disabled without consideration of vocational factors.  If an individual is capable of performing the work he has done in the past, a finding of not disabled must be made at step four. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if the claimant can perform any other work at step five.[24]

---

[22]     42 U.S.C. § 423(d)(1)(A).

[23]     20 C.F.R. § 404.1572(a)-(b).

[24]     *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991), summarizing 20 C.F.R. § 404.1520(b)-(f).  See, also, *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity[25] by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the claimant's record.[26]  The claimant's residual functional capacity is used at the fourth step to determine if the claimant can still do his past relevant work, and is used at the fifth step to determine whether the claimant can adjust to any other type of work.[27]

The claimant bears the burden of proof on the first four steps.[28]  At the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy.[29]  This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence.[30]  If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to

---

267, 271-72 (5th Cir. 2002); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

[25]      20 C.F.R. § 404.1520(a)(4).

[26]      20 C.F.R. § 404.1545(a)(1).

[27]      20 C.F.R. § 404.1520(e).

[28]      *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[29]      *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[30]      *Fraga v. Bowen*, 810 F.2d at 1304.

rebut this finding.[31]  If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends.[32]

In this case, the ALJ found, at step one, that Ms. Ramsey has not engaged in substantial gainful activity since her alleged disability onset date of September 1, 2008.[33]  That finding is supported by evidence in the record.

At step two, the ALJ found that Ms. Ramsey has the following severe impairments: asthma, degenerative disc disease, and status post knee contusion/knee scopes.[34]  This is also supported by evidence in the record.

At step three, the ALJ found that Ms. Ramsey does not have an impairment or a combination of impairments that meets or medically equals a listed impairment.[35] Ms. Ramsey contends that the ALJ erred in failing to properly consider the combination of her orthopedic condition and her obesity.

---

[31]    *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[32]    *Anthony v. Sullivan*, 954 F.2d at 293, citing *Johnson v. Bowen*, 851 F.2d 748, 751 (5th Cir. 1988).  See, also, 20 C.F.R. § 404.1520(a)(4).

[33]    Rec. Doc. 7-1 at 15.

[34]    Rec. Doc. 7-1 at 15.  (The word "scope" is used in this context as an abbreviated reference to an arthroscopic surgical procedure.)

[35]    Rec. Doc. 7-1 at 16.

The ALJ then found that Ms. Ramsey retains the residual functional capacity to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b) except to avoid concentrated exposure to dust, fumes, and gases.[36]  The ALJ then proceeded to step four, where he found that Ms. Ramsey is capable of performing her past work as a customer service manager/supervisor.[37]  He also found that she is capable of performing other jobs existing in the national economy and made alternative findings at step five.[38]  The ALJ found that Ms. Ramsey has not been disabled from September 1, 2008 through the date of the decision.[39]

Ms. Ramsey argues that there are several reasons why the ALJ's decision is erroneous, each of which will be considered in turn.

### 1. THE COMMISSIONER PROPERLY CONSIDERED AND WEIGHED DR. RAFFAI'S OBSERVATIONS REGARDING THE SEVERITY OF HER KNEE INJURIES

Ms. Ramsey argues that the Commissioner failed to properly consider and weigh the medical opinion of Dr. Elemer Raffai, her treating physician, regarding the severity of her knee injuries.  A treating physician's opinions are generally afforded

---

[36]     Rec. Doc. 7-1 at 16.

[37]     Rec. Doc. 7-1 at 18.

[38]     Rec. Doc. 7-1 at 19.

[39]     Rec. Doc. 7-1 at 20.

controlling weight.  "[O]rdinarily the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability."[40]  In this case, however, the record contains no opinions by Dr. Raffai that are inconsistent with the ALJ's decision.

In particular, Ms. Ramsey notes that Dr. Raffai indicated in his treatment note of June 1, 2010 that she has "a lot of arthritis [in her right knee] and eventually may need a knee replacement."[41]  There is no medical opinion that her left knee might need to be replaced, and the statement regarding her right knee does not support a conclusion that Ms. Ramsey is disabled.  Furthermore, an ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion.[42]

Ms. Ramsey also argues that her need for assistive devices indicates that her orthopedic condition is disabling.  She testified at the hearing that she has one knee brace, is waiting for another one, uses a four prong cane, and uses a walker when the pain is severe.[43]  Although Ms. Ramsey testified that these assistive devices were

---

[40]  *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985).

[41]  Rec. Doc. 7-1 at 387.

[42]  *Qualls v. Astrue*, 339 Fed. App'x 461, 466 (5th Cir. 2009), citing *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).

[43]  Rec. Doc. 7-1 at 33.

prescribed for her, the record contains no reference to a prescription for a cane and does not indicate under what circumstances or for how long the walker was to be used.  There is no support in the record for Ms. Ramsey's continued use of a brace on either knee for more than one day past surgery.  To the contrary, the brace placed on Ms. Ramsey's  left knee following surgery was to be removed the next day to facilitate bending of her knee.[44]  The record contains no indication that any continued use of a brace was necessary or advisable.  The only other reference to a brace in the record is Dr. Raffai's prescription for a brace on Ms. Ramsey's left ankle  in November 2009.[45]

Ms. Ramsey allegedly injured her left knee in a motor vehicle accident in August 2008.[46]  Following conservative treatment, Dr. Raffai performed arthroscopic surgery on her left knee on September 4, 2009 to repair a torn medial lateral meniscus tendon.[47]   X-rays taken shortly after the surgery showed mild arthritis and good alignment.[48]  Although she was prescribed a walker upon discharge from the hospital

---

[44]        Rec. Doc. 7-1 at 345, 347.

[45]        Rec. Doc. 7-1 at 359.

[46]        Rec. Doc. 7-1 at 199.

[47]        Rec. Doc. 7-1 at 298.

[48]        Rec. Doc. 7-1 at 297.

following surgery,[49] no restrictions were placed on her activity.  Instead, the discharge form says:  "Level of Activity as tolerated."[50]  The record does not indicate under what circumstances or for how long the walker was to be used.

In November 2009, Ms. Ramsey fell and again injured her left knee.[51]  On January 6, 2010, Dr. Raffai performed another arthroscopic procedure, including a partial medial lateral meniscectomy.[52]  Following this procedure, Ms. Ramsey's leg was placed in a brace but the postoperative order states that she was to discontinue using the brace the day after surgery and ambulate with crutches "to tolerance."[53]  Again, Dr. Raffai ordered that she engage in activity as tolerated.[54]  When Ms. Ramsey reported having continued pain following the surgery, Dr. Raffai stated that she has "a lot of arthritis" and needed to give the knee "time to heal."[55]

---

[49]     Rec. Doc. 7-1 at 326.

[50]     Rec. Doc. 7-1 at 326.

[51]     Rec. Doc. 7-1 at 359.

[52]     Rec. Doc. 7-1 at 343.

[53]     Rec. Doc. 7-1 at 345, 347.

[54]     Rec. Doc. 7-1 at 347.

[55]     Rec. Doc. 7-1 at 349.

In March 2010, Ms. Ramsey reported to Dr. Raffai that she was experiencing pain in her right knee.[56]  An MRI showed torn cartilage in her knee, and x-rays showed mild arthritis.[57]  Dr. Raffai performed a partial lateral meniscectomy on the right knee on April 14, 2010.[58]  Although Ms. Ramsey reported continued pain after the surgery, the knee showed good alignment.[59]  On June 1, 2010, Dr. Raffai noted that "she has a lot of arthritis [in the right knee] and eventually may need knee replacement."[60]

When a treating or examining physician's opinions are inconsistent with other substantial evidence in the record, the opinions are not entitled to any specific weight in the ALJ's decision.[61]  Dr. Raffai's statements concerning the amount of arthritis that Ms. Ramsey has in her knees and his statement that she might eventually need to have her right knee replaced are not medical opinions concerning the level of activity that Ms. Ramsey can engage in nor do they support the conclusion that Ms.

---

[56]     Rec. Doc. 7-1 at 380.

[57]     Rec. Doc. 7-1 at 383-385.

[58]     Rec. Doc. 7-1 at 382.

[59]     Rec. Doc. 7-1 at 386.

[60]     Rec. Doc. 7-1 at 387.

[61]     *DeLeon v. Barnhart*, 174 Fed. App'x 201, 202 (5th Cir. 2006), citing *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994).

Ramsey is disabled.  Additionally, as noted by the ALJ in his decision, Ms. Ramsey's level of activity, as reported in her function report,[62] is inconsistent with a finding that she is disabled.  She reported that she is able to do all of the necessary shopping for she and her daughter, goes to church services and choir practice weekly, surfs the internet, prepares complete meals, and does the family laundry, although she does have assistance with cleaning her home because she reportedly gets tired.

Accordingly, the undersigned finds that the ALJ did not err in considering, interpreting, and/or weighing Dr. Raffai's opinions concerning the severity of the condition of Ms. Ramsey's knees.  Although the ALJ did not refer to Dr. Raffai by name, he reviewed Dr. Raffai's findings based on his examinations of Ms. Ramsey, he reviewed Dr. Raffai's operative reports, and he reviewed Dr. Raffai's findings from his post-surgical visits with Ms. Ramsey.  The ALJ considered Dr. Raffai's records and his findings and opinions expressed in the record.

The medical records indicate that Ms. Ramsey last complained to Dr. Raffai of left knee pain in January 2010.  Her hearing testimony regarding continued left knee pain is not supported by the record.  The treatment for her right knee occurred thereafter, and Ms. Ramsey has not proven that the right knee problem constitutes a condition that satisfies the duration requirements of the Social Security Act.

---

[62]     Rec. Doc. 7-1 at 138-145.

Accordingly, the undersigned finds that the ALJ properly weighed Dr. Raffai's findings and opinions regarding the severity of Ms. Ramsey's knee condition.

**2.     THE COMMISSIONER PROPERLY CONSIDERED AND WEIGHED DR. RAFFAI'S OBSERVATIONS REGARDING ACTIVITY**

Ms. Ramsey argues that the Commissioner failed to properly consider and weigh Dr. Raffai's observations regarding activity.  But the only reference in Dr. Raffai's treatment notes to activity are his orders that she engage in whatever level of activity that she could tolerate after surgery, as noted above.  The record contains no activity restrictions imposed by Dr. Raffai.  The undersigned accordingly finds that the Commissioner did not err in weighing this evidence.

The claimant also argues that the vocational expert's response to a hypothetical question at the hearing indicates that Ms. Ramsey is unable to sustain employment because her knee pain would require excessive absences from work.  But the ALJ's decision is based on a finding that Ms. Ramsey can perform her prior relevant work.  Accordingly, the ALJ's analysis actually concluded at step four.  Finding that there was no error in the ALJ's finding at step four, the undersigned finds that the vocational expert's testimony was unnecessary and the claimant's criticism of that testimony cannot form a basis for remand of the Commissioner's decision.

### 3.   THE COMMISSIONER ADEQUATELY ARTICULATED HIS REASONING CONCERNING THE CLAIMANT'S PAIN COMPLAINTS

Ms. Ramsey's primary complaint is knee pain.  As noted by the ALJ in his decision, she states that she is unable to work due to bilateral knee pain, right leg greater than left leg, and she reports difficulty sitting, standing, and walking due to pain.[63]  Pain can limit the range of jobs a claimant can perform, but there should be clinical or laboratory diagnostic studies showing the existence of a medical impairment which could reasonably be expected to produce the amount of pain alleged.[64]  In this case, Ms. Ramsey does have a severe condition that can cause pain. But pain is disabling only when it is constant, unremitting, and wholly unresponsive to therapeutic treatment.[65]  Mild or moderate pain is not disabling.  Additionally, an ALJ may discount a claimant's subjective complaints of pain and limitations if there are inconsistencies between the claimant's allegations and the evidence as a whole.[66] In this case, Ms. Ramsey has undergone three knee surgeries – but all of them were successful in repairing the damaged parts of the knees and her physician has not limited her activities in any way or placed any restrictions on her.  She is not seeing

---

[63]     Rec. Doc. 7-1 at 17.

[64]     *Selders v. Sullivan*, 914 F.2d at 618.

[65]     *Selders v. Sullivan*, 914 F.2d at 618-19.

[66]     *Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995).

a pain specialist, nor does the record indicate that she is taking medications prescribed for the treatment of severe pain.

Ms. Ramsey also argues that the Commissioner failed to properly evaluate her credibility concerning the severity of her alleged knee pain. "Once a medical impairment is established, the subjective complaints of pain must be considered along with the medical evidence in determining the individual's work capacity."[67]  In this case, the ALJ found that Ms. Ramsey's medically determinable impairments could reasonably be expected to produce her alleged symptoms.  Consequently, the ALJ was required to evaluate the  intensity, persistence, and limiting effects of her symptoms.  "This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects."[68]  The regulations state:  "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that

---

[67]     *Ripley v. Chater*, 67 F.3d 552, 556 (5th Cir. 1995).

[68]     SSR 96-7p, *1.

weight."[69]  Ms. Ramsey argues that the ALJ failed to provide specific reasons why her subjective pain complaints were not found credible.

The Fifth Circuit has held that although an ALJ "is bound . . . to explain his reasons for rejecting a claimant's complaints of pain," he is not required to "follow formalistic rules in his articulation."[70]  In this case, the ALJ expressly noted that he "considered all the symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the [relevant] requirements."[71]  Accordingly, the undersigned finds that the ALJ applied the proper legal standard in evaluating the claimant's credibility.  The ALJ also made an express credibility finding[72] and then explained why he found Ms. Ramsey's statements to be inconsistent with a light work residual functional capacity.[73]  He reviewed the treatment that Ms. Ramsey has had for all of her claimed impairments, he reviewed her testimony concerning her functional limitations and the statements she set forth in a function report, and he noted that no restrictions were recommended by the treating doctor.  He also evaluated the effect that her obesity has

---

[69]     SSR 96-7p, *4.

[70]     *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994).

[71]     Rec. Doc. 7-1 at 16.

[72]     Rec. Doc. 7-1 at 17.

[73]     Rec. Doc. 7-1 at 17-18.

on her functionality.  The ALJ concluded that "the claimant's subjective allegations of physical limitations, weighed against the full medical record, are insufficient to preclude the claimant from all work activity."[74]  The undersigned finds that the ALJ's narrative was sufficient.

Furthermore, a careful review of the record reveals no physician-imposed restrictions on Ms. Ramsey's activities other than Dr. Raffai's instructions that she limit her activities to those she could tolerate immediately after surgery.  The lack of physician-imposed restrictions inconsistent with light work rebuts Ms. Ramsey's alleged inability to work.[75]  An ALJ may discount a claimant's subjective complaints when the alleged impairments contradict the medical evidence.[76]

In this case, the ALJ was presented with medical evidence that Ms. Ramsey has two painful knees but the nature and extent of the functional impairment resulting from those conditions as contrasted with the surgical results and a lack of limitation by her physician is inconsistent with Ms. Ramsey's own subjective evaluation of her functional capacity.  Accordingly, the ALJ's finding regarding Ms. Ramsey's credibility is supported by the evidence in the record.  For these reasons, the

---

[74]     Rec. Doc. 7-1 at 18.

[75]     *Hollis v. Bowen*, 837 F.2d 1378, 1387 (5th Cir. 1988).

[76]     *Hernandez v. Astrue*, 278 Fed. App'x 333, 340 (5th Cir. 2008).

undersigned finds that the Commissioner did not err in evaluating Ms. Ramsey's residual functional capacity.

**4.   THE COMMISSIONER DID NOT ERR IN EVALUATING THE CLAIMANT'S ORTHOPEDIC PROBLEMS IN CONNECTION WITH HER OBESITY**

A diagnosis of obesity does not establish a severe impairment or the existence of a functional limitation.[77]  Instead, "[w]hen obesity is appropriately raised, the ALJ must determine whether obesity is a severe impairment when, alone or in combination with another medically determinable impairment, it significantly limits an individual's ability to perform basic work activities."[78]  Ms. Ramsey vaguely argues that the arthritis in her knees satisfies the requirements of Listing 1.02A.  But she offers no specific discussion of the listing's requirement or any specific evidence in support. Therefore, Ms. Ramsey has not satisfied her burden of proving that her painful knees – either on their own or when coupled with her obesity – meet a listing.

In this case, there is no evidence that Ms. Ramsey's obesity limits her ability to work.  "The ALJ can not make assumptions about the severity or functional effects

---

[77]      SSR 02-1p, Titles II and XVI: Evaluation of Obesity, 2000 WL 628049, at 6 (S.S.A.).

[78]      *Schultz v. Astrue*, No. 09-3238, 2010 WL 2733605, *9 (E.D. La. June 8, 2010), citing 20 C.F.R. § 404.1520(c).

of obesity combined with other impairments."[79]   To the contrary:  "Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment.  We will evaluate each case based on the information in the case record."[80]

In this case, Dr. Raffai's records contain no reference to Ms. Ramsey's weight contributing to her orthopedic problems.  Although her orthopedic problems may be degenerative in nature, she links each knee surgery to a specific event – a workplace accident,[81] a motor vehicle accident,[82] and a fall.[83]  Ms. Ramsey's family doctor, Dr. Mark E. Clawson, does suggest that her losing weight would be of benefit to her knee condition.  Before her first surgery, he said, "She needs to diet and exercise.  If she can get a little bit of weight off of the knee, it would really help."[84]  But, like Dr. Raffai, Dr. Clawson did not evaluate Ms. Ramsey's functional or occupational capacity or impose any limitations tied to Ms. Ramsey's obesity.  In fact, the record

---

[79]   *Schultz v. Astrue*, 2010 WL at 9, citing SSR 02-1p at 6.

[80]   SSR 02-1p at 6.

[81]   Rec. Doc. 7-1 at 34 (right knee).

[82]   Rec. Doc. 7-1 at 34, 199, 228 (left knee).

[83]   Rec. Doc. 7-1 at 39, 359 (left knee).

[84]   Rec. Doc. 7-1 at 189.

as a whole contains no evidence that Ms. Ramsey's obesity significantly limits her ability to perform basic work activities.

A diagnosis of obesity, standing alone, does not establish that a claimant has a severe impairment.  To support such a finding, the claimant's obesity must be correlated to a degree of functional loss.  "There is no specific level of weight or BMI that equates with a 'severe' or a 'not severe' impairment. . .  Rather, we will do an individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment is severe."[85]

In his opinion, the ALJ recognized and considered Ms. Ramsey's obesity,[86] but he did not find her obesity to be a severe impairment.  Ms. Ramsey had the obligation of establishing that her obesity was a severe impairment because it limits her functionality.  But there is no such evidence in the record.  Ms. Ramsey has offered no evidence that her obesity imposed additional limitations other than those found by the ALJ.  The undersigned therefore finds that the ALJ's consideration of her obesity and his implicit conclusion that her obesity is not a severe impairment was based on appropriate legal standards and supported by substantial evidence.

---

[85]      SSR 02-1p at 4.

[86]      Rec. Doc. 7-1 at 18.

-21-

## CONCLUSION AND RECOMMENDATION

For the reasons explained above, the undersigned finds that the Commissioner's ruling that Ms. Ramsey is not disabled is supported by substantial evidence.  Accordingly,

**IT IS THE RECOMMENDATION** of the undersigned that the decision of the Commissioner be AFFIRMED.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.  See *Douglass v. United Services Automobile Association*, 79 F.3d

1415 (5ᵗʰ Cir. 1996).

Signed in Lafayette, Louisiana, this 12ᵗʰ day of July 2012.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE